## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| NEWSAT LIMITED, *et al*,[1] | Case No. 15-_____ (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**DECLARATION OF LEONARD MARTIN MCCARTHY IN SUPPORT OF (I) ADMINISTRATORS' VERIFIED PETITIONS FOR RECOGNITION OF AUSTRALIAN ADMINISTRATION PROCEEDINGS AND RELATED RELIEF; (II) ADMINISTRATORS' MOTION FOR JOINT ADMINISTRATION; AND (III) ADMINISTRATORS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, AND AFTER NOTICE AND A HEARING, A PRELIMINARY INJUNCTION PURSUANT TO SECTIONS 1519, 105(a), 362, AND 365 OF THE BANKRUPTCY CODE**

Leonard Martin McCarthy, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1. I am a partner with the law firm of Henry Davis York, that has been retained (for the limited purpose of preparing this affidavit) by Mr. Stephen James Parbery and Mr. Marcus William Ayres of PPB Advisory in Sydney, Australia, who, on April 16, 2015, were duly appointed as administrators (the "**Administrators**") of NewSat Limited ("**NewSat**") and certain of its subsidiaries, including NSN Holdings Pty Ltd, NewSat Services Pty Ltd, NewSat Networks Pty Ltd, NewSat Space Resources Pty Ltd, Jabiru Satellite Holdings Pty Ltd and Jabiru Satellite Ltd (together with NewSat, the "**Debtors**"). I am duly authorized to make this declaration on behalf of the Administrators. Henry Davis York also act on a more general basis for Mr Jason Preston and Mr Matthew Wayne Caddy of McGrathNicol, who, on April 16, 2015,

---

[1] The last four digits of the Australian Company Number for each debtor follow in parentheses: NewSat Limited (7303); NSN Holdings Pty Ltd. (3263); NewSat Services Pty Ltd. (8708); Jabiru Satellite Holdings Pty Ltd. (7800); NewSat Space Resources Pty Ltd. (9943); NewSat Networks Pty Ltd. (4994); and Jabiru Satellite Ltd. (7365).

were appointed as joint and several receivers and managers (the "Receivers") of the Debtors prior to the appointment of the Administrators.

2.     I submit this declaration in support of the (i) *Verified Petitions for Recognition of Australian Administration Proceedings and Related Relief*, (ii) *Motion Pursuant to Fed. R. Bank. P. 1015(b) for Order Directing Joint Administration of Cases Under Chapter 15 of the Bankruptcy Code*; and (iii) *Emergency Motion for Temporary Restraining Order, and after Notice and a Hearing, a Preliminary Injunction Pursuant to Sections 105(a), 1519, 362 and 365 of the Bankruptcy Code*.

3.     This declaration is comprised of matters that are statements of legal opinion and/or statements of fact.  Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of Australian law as a practising lawyer.

4.     Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Administrators and are true to the best of my knowledge, information and belief.

**Professional Background**

5.     I am a legal practitioner practising in New South Wales, Australia. I was admitted as a solicitor of the Supreme Court of New South Wales in 1999. I am also registered as a legal practitioner of the High Court of Australia which in addition entitles me to appear in the Federal Court of Australia. I specialise in corporate restructuring and insolvency. I am a member of INSOL and am also, since 2014, a Fellow of INSOL.

**Background**

6.     The Debtors and their non-debtor affiliates (the "**NewSat Group**") operate as an integrated satellite communications company. The NewSat Group provides satellite solutions to deliver internet, voice, data and video connectivity to government and private sector clients in remote locations, and owns and operates teleports.  Beginning in 2011, the NewSat Group acquired rights to multiple orbital slots providing the necessary platform to become a "satellite operator."  Through its Jabiru Satellite Program, the NewSat Group commenced a strategic growth project to launch a fleet of next generation geostationary satellites targeting high-growth markets with valuable customer bases and capitalizing on existing client relationships from the teleport business.   Each of the Debtors is registered and incorporated in Australia, and the ultimate parent company, NewSat, is listed on the Australian Stock Exchange.

**Current Forms of Corporate Insolvency Under Australian Law**

7.     Australian law has evolved from English law, and is very similar to English common law and rules of equity. In Australia, the formation, operation and dissolution of companies is primarily regulated by the Australian Corporations Act 2001 (the "**Corporations Act**"). In general, the Corporations Act applies to companies that are either registered or registrable. Locally formed companies, such as the Debtors, are registered on incorporation.

8.     The Corporations Act provides for five principal formal procedures to address the insolvency of, or the restructuring of the business affairs if approaching insolvency of, a company:

    (a)    administration;

    (b)    deed of company arrangement;

    (c)    liquidation;

    (d)    receivership; and

3

(e)     scheme of arrangement

9.      Where only (a) administration and (d) receivership are presently relevant to the circumstances of the Debtors, I have addressed only those formal procedures in the following paragraphs.

10.     In 1993 a new procedure for the administration of insolvent or near insolvent companies was introduced in Australia, known as "administration". I am informed and verily believe that the procedure has similarities with the administration process available in the United Kingdom and the Chapter 11 procedure applicable in the United States of America (although the administration of the company in Australia is taken out of the control of the company's directors and placed under the control of an independent insolvency practitioner who is a registered liquidator).

11.     The object of the administration process is stated in section 435A of the Corporations Act as being to provide for the business, property and affairs of an insolvent company to be administered in a way that:

(a)     maximises the chances of the company, or as much as possible of its business, continuing in existence; or

(b)     if it is not possible for the company or its business to continue in existence, results in a better return for the company's creditors and members than would result from an immediate winding up of the company.

12.     The administration process commences with the appointment of an administrator. An administrator may be appointed by:

(a)     A company if the board has resolved that the company is insolvent or is likely to become insolvent at some future time, provided that the company has not already been wound up (section 436A);

(b)     A liquidator or provisional liquidator of a company if he or she thinks the company is insolvent or is likely to become insolvent at some future time (section 436B); or

(c)     as is the case with the Debtors, a person who is entitled to enforce a security interest in the whole, or substantially the whole, of a company's property, provided the security interest is enforceable and the company is not already being wound up or in provisional liquidation (section 436C).

13.     While a company is under administration, subject to certain limitations on the administrator's rights occasioned upon an appointment of a receiver, section 437A provides that the administrator:

(a)     has control of the company's business, property and affairs;

(b)     may carry on that business and manage the company's property and affairs; and

(c)     may perform any function, and exercise any power, that the company or any of its officers could perform or exercise if the company were not under administration.

14.     The administrator acts as the company's agent with the full powers of its officers (which includes the directors) (sections 437A and 437B). The powers of the company officers are suspended (section 437C(1)). Subject to the rights of any appointed receiver (section 441A(4)), only the administrator may deal with the company's property during the administration. Any dealing with the company's property by anyone else (other than a receiver) will be void (unless the administrator consented to it or it was pursuant to a Court order (section 437D)).

15.     The most significant duties of an administrator include the following:

(a)     being to investigate the company's business, property, affairs and financial circumstances as soon as is practicable after the administration begins (section 438A(a));

(b)     Form an opinion about:

(i)     whether an arrangement with the company's creditors will be in the creditors' best interests;

(ii)    whether it would be in the creditors' interests for the administration to end;

(iii)   whether it would be in the creditors' interests for the company to be wound up (Section 438A(b)); and

(c)     Convene a meeting of the company's creditors to "decide the company's future" (section 439A(1)) generally within 20 business days of the commencement of the administration. This time period may be extended by the Court (section 439A(6)).

16.     The administrator is liable for "debts" he or she incurs in the performance or exercise of any of his or her functions and powers as administrator, for services rendered or goods bought, or property leased, used or occupied. The administrator is entitled to be indemnified out of the company's property for such debts and for his or her remuneration. The administrator holds a lien to secure this indemnity and that lien is subordinated in certain circumstances; for example, to retention of title security interest perfected under the Australian Personal Properties Securities Act 2009 (section 443D) and, as in the present circumstances of the Debtors, where a secured creditor had appointed receivers to the company under a security interest prior to the appointment of an administrator (section 443E(2)).

17.     During the administration, the powers of the shares in the company cannot be transferred, except with the written consent of the administrator or by order of the Court (section 437F).

18.     During the administration every public document and every negotiable instrument of the company must bear the expression "administrators appointed" after the company's name (section 450E).

19.     The administrator is also an officer of the company and under the Corporations Act has statutory duties to act honestly and with reasonable diligence. Like all company officers, an administrator owes statutorily prescribed and general law duties to the company. The Corporations Act provides a mechanism for an administrator to be removed from office. That mechanism is provided for by section 449B of the Corporations Act which provides as follows:

6

"On the application of Australian Securities and Investments Commission ("**Commission**") or of a creditor of the company concerned, the Court may:

(a)     remove from office the administrator of a company under administration or of a deed of company arrangement; and

(b)     appoint someone else as administrator of the company or deed."

20.     Creditors also have the right to replace the administrator at the meeting of creditors that the administrator is obliged to hold within 8 business days after the administration begins. Section 436E(4) of the Corporations Act provides:

"At the meeting, the company's creditors may also, by resolution:

(a)     remove the administrator from office; and

(b)     appoint someone else as administrator of the company."

21.     The administration procedure automatically imposes a general moratorium on the rights of most creditors during the period of the administration. The effect of this moratorium during this period includes:

(a)     to prevent the company from being wound up (section 440A);

(b)     subject to certain exceptions, to restrict third parties in the exercise of rights they might have in property of the company or property which the company uses or has in its possession (e.g. secured creditor or lessors) without the administrator's consent or leave of the Court (section 440B);

(c)     to prevent, subject to certain exceptions (that are not material in relation to this application), commencement or continuation of Court proceedings against the company without the administrator's written consent or leave of the Court (section 440D);

(d)     to prevent any enforcement process in relation to property of the company except with the leave of the Court (section 440F).  Enforcement process is defined (in section 9) to mean execution against the property or any other enforcement process that involves a Court or a sheriff; and

(e)     to prevent guarantees provided by the company's directors or their spouses from being enforced (section 440J).

22.     In essence, the administration procedure provides the company with a statutory moratorium to allow an independent administrator to investigate the company's affairs

7

and form an opinion, to be conveyed to creditors, about the alternatives for the future of the company. At the meeting of the company's creditors convened to decide the company's future, creditors will be presented with the administrator's report, which will set out the available options and will provide a recommendation in relation to those alternatives. At this meeting (which may be adjourned by the creditors for a period up to 45 business days), creditors will choose among the following three alternatives:

(a)     that the company execute a deed of company arrangement ("**DOCA**") (section 439C(a)); or

(b)     that the administration should end (*i.e.* that the company should be handed back to the control of the directors) (section 439C(b)); or

(c)     that the company be wound up (section 439C(c)).

23.     A resolution of creditors is only passed if a majority of creditors (in attendance in person or by proxy) in both number and value vote in favour of it.  If a majority of creditors in either value or number, but not both, vote in favour of a resolution then the resolution is decided by the casting vote of the chairman of the meeting.  It is usual for the administrator to chair the meeting of creditors.

24.     If the creditors vote for the company to execute a DOCA, the effect of the deed upon the claims of creditors will be set out in the terms of the deed. Interested parties, including creditors, have a right to apply to the Court to set aside a deed on certain grounds (Section 445D(1)).

25.     The administration procedure is therefore not an end unto itself - it is a means to an end. The statutory moratorium and other protections against creditors' claims allow the administrator to take control of the company for what is usually a short period to investigate its affairs and to provide a recommendation to creditors as to the company's future. The administration will end with either the company being handed back to the control of its directors

(which is generally a rare outcome), the company being wound up, or a DOCA being entered into, the terms of which will govern and regulate the rights and entitlements of pre-appointment creditors of the company.

**The Role of the Court in the Administration Process**

26.     The Courts in Australia do not have a necessary role in initiating an administration, the convening of meetings nor any approval of a DOCA. Nevertheless, the Court does have a general supervisory jurisdiction and there is substantial judicial oversight which can be invoked by interested persons, including the company, a creditor, the administrator or the Commission. In addition to provisions already mentioned, Division 13 of Part 5.3A of the Corporations Act sets out the powers conferred by the Corporations Act on the Federal Court of Australia and the Supreme Courts of each state of Australia in relation to administrations.  In this regard:

(a)     section 447A allows these Courts to "make such order as it thinks appropriate about how this Part is to operate in relation to a particular company";

(b)     section 447B allows these Courts to "make such order as it thinks necessary to protect the interest of the company's creditors while the company is under administration";

(c)     section 447C enables the administrator or the company's creditors to apply to the Court where there is any doubt about the validity of the appointment of the administrator or an administration of a DOCA;

(d)     section 447D enables the administrator to apply to the Court for directions about the exercise of any of his functions and powers; and

(e)     section 447E provides the Court with a supervisory role in relation to the administrator's conduct.

27.     Moreover, under Section 445D of the Corporations Act, Courts are permitted to terminate a DOCA if, inter alia, it is, was, or would be:

(a)     oppressive or unfairly prejudicial to, or unfairly discriminates against, one or more such creditors; or

(b)     contrary to the interests of the creditors of the company as a whole

28.     Effectively, the court may make orders it considers appropriate for the operation of the administration regime in relation to the company which is the subject of the administration (section 447A).

29.     As to the ambit of the Court's power under section 447A, I respectfully draw the Court's attention to the majority decision of the High Court of Australia in *Australasian Memory Pty Ltd v Brien* (2000) 200 CLR 270 (at 280 - 281), which noted the following:

- Next, the other provisions of Div 13 of Part 5.3A give a Court wide powers to protect creditors during the administration, to declare whether an administrator was validly appointed, to give directions to an administrator and to supervise an administrator of a company or a deed of company arrangement. And while full effect must be given to the provisions of s 447F (that "[n]othing in this Division *limits* the generality of anything else in it") it is clear, from the other provisions of Div 13 that we have mentioned, that s 447A was intended to permit a much wider class of orders than those which declare what is the effect of the Part or which protect the interests that creditors no doubt have in the administration of a company being carried out in accordance with law.

- The considerations we have mentioned suggest that the powers under s 447A are wide but they do not compel the conclusion that they are entirely without limit. Some particular limitations, suggested in the course of argument, must be examined: first, that s 447A does not permit a court to make an order altering the times fixed by those provisions of Part 5.3A which contain express provision for variation of the time so fixed; second, that it permits only orders having prospective effect; third, that it does not permit the making of orders affecting vested rights; and, fourth, that it does not apply unless there is a continuing administration (or, presumably, an extant deed of company arrangement).

30.     In order to illustrate the manner in which a Court's jurisdiction might be invoked in relation to an administration, examples of when section 447A has been relied upon include (among others):

(a)     Indemnifying an administrator: *Deputy Commissioner of Taxation v Distinctive Enterprises Pty Ltd* (2008) 71 ATR 542;

(b)     Appointing a new administrator: *Re National Express Group Australia (Bayside Trains) Pty Ltd* (2003) 46 ACSR 674; and

      (c)     Terminating the administration: *Spacorp Australia Pty Ltd v Fitzgerald* (2001) 19 ALCL 979.

## Deed of Company Arrangement - DOCA

31.     As mentioned in paragraph 22 above, an administration may result in a DOCA. A DOCA governs the relationship between a company and its creditors, including the scheduling of payments and the release, if any, of the debts of the company during the life of the deed. Subject to the Corporations Act, a DOCA prescribes how a company is to be managed and how its creditors' claims are to be satisfied.

32.     If during the administration process it is resolved by the company's creditors at the second meeting of creditors that a DOCA be executed by the company, then the administrator of the company will become the administrator of the deed, unless the creditors resolve to appoint another person. The administrator of the deed must prepare an instrument that sets out the terms of the DOCA, and the instrument must then be executed by the company and the deed administrator within 15 business days of the creditors so resolving (section 444B).

33.     A DOCA will terminate in accordance with its terms, by a resolution of the creditors or by order of the Court. Where appropriate, on termination of a DOCA, the Corporations Act provides for the conversion of the DOCA into a creditor's voluntary winding-up.

34.     Division 13 of Part 5.3A of the Corporations Act equally applies to a company the subject of a DOCA. In other words, the Court has a general supervisory jurisdiction and there is substantial judicial oversight that may be invoked by interested persons.

## Receivership

35.     As set out at paragraph 1 above, the Receivers were appointed to the Debtors on April 16, 2015, prior to the appointment of the Administrators. In Australia, the

concept of "receivership" generally refers to the process in which a receiver (or receiver and manager) is appointed to a company by a secured creditor to collect or protect property for the benefit of that secured creditor.

36.    For the purposes of this declaration, I will use the term "receiver".  It should be noted that pursuant to the Corporations Act, the term "receiver" as used in that Act also includes a "receiver and manager" in relation to the property of a company.  Where I use the term "receiver" I also intend it to mean both "receiver" and "receiver and manager" unless I state otherwise.[2]

37.    The Corporations Act when dealing with "receivership" also uses the term "controller".  This term is defined in section 9 of the Corporations Act to include a receiver, a receiver and manager of property or anyone else who is in possession or control of that property for the purpose of enforcing a security interest on the property of the company.  Although a "controller" who is not a "receiver" is sometimes appointed to enforce a security interest, this is an uncommon occurrence, and is not relevant to the circumstances of the Debtors (it is relevant to note that as a "receiver" is comprised within the definition of "controller", references in the Corporations Act to a controller are applicable to a receiver).

38.    The appointment of a receiver is usually made in one of two ways.  A receiver may be appointed by a Court or a receiver may be appointed out of Court, as is the case in the present circumstances of the Debtors.  In terms of a receiver appointed by the Court, most if not all Australian jurisdictions have an inherent jurisdiction to appoint a receiver where it

---

[2]    Traditionally and prior to the implementation of the Corporations Act this distinction was important because under general law a distinction is made between the term "receiver" and "receiver and manager".  As Lord Jessel MR in *Re Manchester & Milford Ply Co: Ex parte Cambrian Rly Co (1880) 14 Ch D 645 said at 653*: "A 'receiver' is a term which was well known in the Court of Chancery, as meaning a person who receives rents or other income paying ascertained outgoings, but who does not, if I may say so, manage the property in the sense of buying or selling or anything of that kind."

appears to the court to be just or convenient to do so.  The Court will use its discretionary power to appoint a receiver taking into account all of the factual matters before it.

39.     Although appointments by the Court are not rare occurrences, it is more common for an appointment of a receiver to be made out of court, as is the case with the Debtors in these circumstances.  As the Receivers have been appointed out of Court, this declaration will focus on receivers that have been appointed in such a way.

40.     Appointments out of court can be made:

(a)     by way of power contained in a statute of the Commonwealth of Australia or each of the Australian states; or

(b)     by an express power in a debenture.

41.     By far the most common form of appointment out of court is by an express power set out in a debenture.  I will use the word "debenture" in this statement to mean charge, security interest, mortgage or other security instrument.  Usually this would involve a lender (or, as in the case, a Security Trustee acting on behalf of lenders) pursuant to a debenture appointing a receiver in accordance with the terms and conditions of the debenture upon the happening of an event of default as described in the debenture.  This is also what has happened in relation to the appointment of the Receivers to the Debtors.  Accordingly, this statement will focus upon an appointment made in such a way, that is, an appointment of receivers out of court pursuant to an express power in a debenture.

42.     In general terms, the primary goal of a receiver who has been appointed out of Court is to recover and realise the assets the subject to his appointment, repay the debenture holder who appointed him, and return any surplus to the company.  Section 433 of the Corporations Act identifies a small number of exceptions to this general principle.  Those exceptions primarily relate to particular groups of creditors (such as creditors with particular

insurance claims and certain entitlements of employees of the company).

43.    The effects of the appointment of a receiver out of Court on a company are numerous.  Amongst other things, an appointment has the following effect:

(a)    The receiver who is appointed will generally, if the debenture so provides, act as the agent of the company.  Although this position sometimes causes confusion to those dealing with the company in "receivership", the position is well settled - upon appointment the receiver's primary duty will be owed to the debenture holder but the receiver acts as the agent of the company.  This agency relationship will continue between the receiver and the Company up until the receivership is terminated or the company goes into liquidation.  Upon liquidation, the receiver's agency is curtailed, but not necessarily terminated.

(b)    The appointment of a receiver has a significant effect on the management of the company.  As Street J said in *Hawkesbury Development Co Limited v Landmark Finance Pty Ltd* (1970) 92 WN (NSW) 199 at 209:

> "Receivership and management may well dominate exclusively a company's affairs in its dealings and relations with the outside world.  But it does not permeate the company's internal domestic structure.  The structure continues to exist notwithstanding that the directors no longer have authority to exercise their ordinary business-management functions.  A valid receivership and management will ordinarily supersede, but not destroy, the company's own organs through which it conducts if affairs.  The capacity of those organs to function bears a direct inverse relationship to the validity and scope of the receivership and management".

As a result, directors will have no power over the assets in the possession and control of a receiver during a receivership.

(c)    An appointment of a receiver does not mean that the property of the company vests in the receiver or entitles him/her to transfer the property into their own names. Rather, the receiver can recover any property of the company by bringing proceedings in the name of the company and once possession of any property has been taken by the receiver then the receiver is not obliged to surrender it until the appointment has been determined.

(d)    Generally speaking a creditor who has obtained a judgment against the company will not take priority over the rights of the secured creditor appointing the receiver.

(e)    Unlike the administration or liquidation process, the appointment of a receiver does not of itself result in an automatic stay on the initiation or continuation of legal proceedings. Although this is the general position, it should be noted that in terms of the Debtors, administrators have already been appointed to the group of companies and a stay operates by virtue of that appointment. I refer to the effect

of administration process on the initiation or continuation of legal proceedings at paragraph 21 above.  Consequently, absent administration, unsecured creditors would be able to commence litigation or other proceedings, including winding up proceedings against a company.  However, for practical purposes, there may be little utility in any enforcement action being taken against the company by other creditors as the assets will be under the control of the receivers assuming they have been appointed to all assets of the company.

(f)     Finally, pursuant to ss9, 441A and 441D of the Corporations Act the holder of a security interest (debenture holder) that covers all or substantially all of the assets of the company has within 13 business days from the date of the appointment of an administrator of a corporation, to enforce a debenture if the debenture holder decides to do so.  It should be noted that sometimes debenture holders decide not to exercise this option and allow an administrator to deal with the assets and property of a company subject to the rights of the debenture holder.  On other occasions the debenture holder will proceed to enforce its security by the appointment of a receiver within the 13 business day period.  Should a receiver be appointed pursuant such a debenture, then the appointment of the receiver overrides the power of the administrator to take the control and possession of the property of the company in administration.

44.     The receiver is also liable for certain "debts" that he or she incurs in the course of the receivership when they enter into possession of or assume control of the property of the corporation for the purposes of enforcing a debenture.  This will be the case notwithstanding any agreement to the contrary (section 419(1)).  Most receivers will be entitled to an indemnity from the company, secured by a lien over the assets of the company for all debts legitimately incurred during the course of the receivership by virtue of the terms and conditions of the debenture itself.

45.     A receiver who has been appointed out of Court will derive their powers from two sources.  The first is from the terms of the debenture under which the receiver has been appointed, and the second source of power is section 420 of the Corporations Act. Without limiting any powers that may be contained in the particular debenture, the powers set out in the Corporations Act are wide reaching.  The powers are as follows:

(a)     to enter into possession and take control of property of the corporation in accordance with the terms of that order or instrument; and

(b)      to lease, let on hire or dispose of property of the corporation; and

(c)      to grant options over property of the corporation on such conditions as the receiver thinks fit; and

(d)      to borrow money on the security of property of the corporation; and

(e)      to insure property of the corporation; and

(f)      to repair, renew or enlarge property of the corporation; and

(g)      to convert property of the corporation into money; and

(h)      to carry on any business of the corporation; and

(j)      to take on lease or on hire, or to acquire, any property necessary or convenient in connection with the carrying on of a business of the corporation; and

(k)      to execute any document, bring or defend any proceedings or do any other act or thing in the name of and on behalf of the corporation; and

(m)      to draw, accept, make and endorse a bill of exchange or promissory note; and

(n)      to use a seal of the corporation; and

(o)      to engage or discharge employees on behalf of the corporation; and

(p)      to appoint a solicitor, accountant or other professionally qualified person to assist the receiver; and

(q)      to appoint an agent to do any business that the receiver is unable to do, or that it is unreasonable to expect the receiver to do, in person; and

(r)      where a debt or liability is owed to the corporation — to prove the debt or liability in a bankruptcy, insolvency or winding up and, in connection therewith, to receive dividends and to assent to a proposal for a composition or a scheme of arrangement; and

(s)      if the receiver was appointed under an instrument that created a charge on uncalled share capital of the corporation:

(i)      to make a call in the name of the corporation for the payment of money unpaid on the corporation's shares; or

(ii)      on giving a proper indemnity to a liquidator of the corporation—to make a call in the liquidator s name for the payment of money unpaid on the corporation's shares; and

(t)      to enforce payment of any call that is due and unpaid, whether the calls were made by the receiver or otherwise; and

(u)      to make or defend an application for the winding up of the corporation; and

(w)      to refer to arbitration any question affecting the corporation.

46.    In addition to the primary duty of a receiver to gather in, manage and realize the assets the subject of the debenture with a view to repaying the secured creditor's debt, a receiver who has been appointed to the company has many other duties and liabilities.  These duties and liabilities arise under general law and under statute.  These duties and liabilities are also wide ranging.  Some of the duties are administrative in nature (such as duties of reporting and filing documents with the Commissioner along with duties concerning compliance with notifications to the Australian Taxation Office), while other duties and liabilities deal with the general conduct of the receiver (such as the receiver's duty of care in exercising their power of sale).

47.    Upon the conclusion of a receivership, the company will continue to exist, and the control of all of the property of the company will be returned to the proper governing authority for the company, namely, the directors, an administrator or liquidator, as the case may be.

48.    Finally, pursuant to the Australian Cross-Border Insolvency Act 2008 (the act that implements the UNCITRAL Model Law in Australia), the Corporations Act provisions contained in Part 5.2 (*Receivers, and other controllers, of property of corporations*) are not laws of Australia relating to insolvency or proceedings to which that act applies.  As set out above, the Company first went into and remains in administration. The provisions of the Corporations Act contained in Part 5.3A (*Administration of a company's affairs with a view to executing a deed of company arrangement)* are laws of Australia relating to insolvency or proceedings to which that Act applies.  This is also the case with a liquidation of the Company, should creditors decide to place the Company in liquidation.

**Role of the Court in Receiverships**

49.     By definition, the Courts in Australia do not have a role in initiating an out of Court receivership.   Nevertheless, the Court does have a general supervisory jurisdiction which may be invoked by interested persons, including creditors, the receiver or the Commissioner.

50.     Pursuant to sections 424(1) and (2) of the Corporations Act, a receiver may apply to the Court for directions in relation to any matter arising in connection with the performance or exercise of any of the receiver's functions and powers.   This is a procedure stipulated by statute that is intended to give a receiver direct access to the Court.   This process however cannot be used in order for the Court to provide directions on the commercial and business judgments of the receiver and it is doubtful whether an application pursuant to section 424 of the Corporations Act empower the Court to make any order that will bind a third parties (other than the receiver).

51.     Further, the Court may act in the following ways concerning the conduct and action of a receiver:

(a)     if it appears to the Court or to the Commissioner that a receiver has not faithfully performed its functions then the Court may inquire into the matter and the Court may take such action as it thinks fit (section 423(1)). Any person has the power to complain to the Court under this provision about any "act or omission" of the receivers;

(b)     the Court may require or examine a receiver to answer questions about the performance or exercise of any of its functions or powers (section 423(3)(a) and (b)).  The Court may also direct an investigation to be made into the books of a receiver (section 423(3)(c));

(c)     upon the request of a liquidator, administrator, the administrator of a deed of company arrangement or the Commissioner, the Court may fix the amount to be paid by way of remuneration to any person who has been appointed as receiver (section 425);

(d)     upon the application of the company, the Court may remove the receiver where it is satisfied that the receiver has been guilty of misconduct

(section 434A);

(e)     where upon the application of a liquidator, the Court may order that the receiver cease to act or that the receiver act only for a specified period (section 434B); and

(f)     any person "aggrieved" by any act, omission or decision of a receiver may appeal to the Court in relation to the matter, and the Court may confirm, reverse, or remedy the decision and make such orders as it thinks fit (section 1321).

## Effect of Receivership on Administration

52.     Apart from those factors already set out above, a receivership and administration can, and will, often operate concurrently. I will explain the effect of the appointment of the Receivers on the administration of the Debtors below.

## Application to the Circumstances of the Debtors

53.     The Debtors were placed into administration by Citicorp International Limited as Security Trustee of the trust known as the "Jabiru Australian Collateral Trust" ("**Security Trustee**"), pursuant to sections 436C of the Corporations Act.

54.     Apart from the administration of the Debtors, on April 16, 2015, Mr Jason Preston and Mr Matthew Wayne Caddy of McGrathNicol, were appointed as joint and several receivers and managers of (the "**Receivers**") of the Debtors by the Security Trustee exercising its rights pursuant to the terms and conditions of various security interests. The appointment of the Receivers was made in accordance with sections 441A and 441D of the Corporations Act (forming part of the administration regime).

55.     Ordinarily where an administrator has been appointed to a company, only the administrator may deal with a company's property during administration.  To the extent that anyone else may deal with the company's property then such actions will be void.  However, this restriction does not apply to receivers appointed within 13 business days of the appointment of

an administrator.  Accordingly, it will not apply to the Receivers of the Debtors.

56.     As mentioned above, the appointment of a receiver would not usually result in an automatic stay on the initiation or continuation of legal proceedings.  However, since the company is already in administration a stay on the initiation or continuation of legal proceedings is already and will continue to be in force.

57.     The Courts in Australia have not had a necessary role in initiating either the administration or receivership of the Debtors.  However, this does not mean that either of the processes are not subject to the supervision of the Courts.  To the contrary, the Court does have a general supervisory jurisdiction to the extent identified above in both an administration and a receivership, and a range of parties can and do invoke the Court's jurisdiction to review particular matters.

58.     To that end, both the administration and the receivership of Debtors will continue to operate concurrently.  This means that a number of matters relating to the Debtors will be conducted by either the Administrators or the Receivers.  In particular:

(a)     the Receivers will primarily deal with and determine all issues relating to the assets and property of the Debtors.  The Receivers will also be responsible for and deal with the on-going trading operations of the Debtors; and

(b)     the Administrators will deal with the claims of creditors of the Debtors. The Administrators will also deal with and be responsible for the administration process to be carried out in accordance with the Corporations Act (including the operation of any DOCA should such a deed be proposed and executed by Debtors).

59.     As both the administration and the receivership of the Debtors will continue on concurrently, the Receivers will remain in place until such time as the Security Trustee (on behalf of the Debtors' lenders) has been paid in full or the Receivers' appointment has been terminated.  As the Debtors are also in administration, it is very unlikely (although

theoretically possible) that upon the conclusion of the receivership that the control of the property of the Debtors will be returned to the company's board of directors. Rather, depending upon the outcome of the administration process, it is likely that Debtors will either proceed into a DOCA or be placed into voluntary liquidation. If the Debtors were to go into liquidation after the administration process, then both the receivership and liquidation would continue to operate concurrently.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16 th day of April 2015.

Leonard Martin McCarthy