**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | ) | Chapter 15 |
| | ) | |
| THANE INTERNATIONAL, INC., *et al.,*[1] | ) | Case No. 15-12186 (___) |
| | ) | |
| Debtors in a Foreign Proceeding. | ) | (Joint Administration Requested) |
| | ) | |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF

Richter Advisory Group Inc. (the "Receiver") is the court-appointed receiver and duly authorized foreign representative for Thane International, Inc., Thane Direct, Inc., Thane Direct Company, West Coast Direct Marketing, Inc., TDG, Inc., Thane Direct Canada Inc. and Thane Direct Marketing, Inc. (collectively, the "Thane Debtors" or the "Thane Group") in Canadian insolvency proceedings pending in Toronto, Ontario, Canada (the "Canadian Proceeding").[2]

The Receiver, by and through its undersigned counsel, Womble, Carlyle, Sandridge & Rice, LLP, has filed Official Form 1 Petitions under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code") for each of the Thane Debtors, and files this Verified Petition for Recognition of Foreign Main Proceeding and Related Relief (the "Petition for Recognition") pursuant to section 1515 of the Bankruptcy Code seeking (i) entry of an Order recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of

---

[1]     The last four digits of the Employer Identification Number for each debtor follow in parentheses: Thane International, Inc. (0275), Thane Direct, Inc. (2330), Thane Direct Company (N/A), West Coast Direct Marketing, Inc. (6456), TDG, Inc. (4037), Thane Direct Canada Inc. (8064) and Thane Direct Marketing, Inc. (N/A).

[2]     The Canadian Proceeding includes proceedings under both Canadian federal and provincial law. Richter Advisory Group Inc. was appointed as receiver pursuant to Section 243(1) of the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") and as receiver pursuant to Section 101 of the Ontario's *Courts of Justice Act*.

the Bankruptcy Code, and (ii) relief under sections 1520 and 1521 of the Bankruptcy Code.  In

the alternative, if for any reason the Court finds that the Canadian Proceeding is not eligible for

recognition as a foreign main proceeding as to any of the Thane Debtors, the Receiver seeks

recognition of a foreign non-main proceeding as to such entity, as defined in section 1502(5) of

the Bankruptcy Code, and seeks relief under section 1521 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.      The Order appointing the Receiver in the Canadian Proceeding was

entered on October 23, 2015.  The Receiver has filed an Official Bankruptcy Form 1 petition for

each of the Thane Debtors, this Petition for Recognition, along with a separate motion for

provisional relief pursuant to Bankruptcy Code section 1519.

2.      Pursuant to section 1515(b) of the Bankruptcy Code, a certified copy of

the Order appointing the Receiver and authorizing the Receiver to act as foreign representative in

these Chapter 15 proceedings is attached hereto as Exhibit A.  Pursuant to section 1515(b) of the

Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), a statement of all foreign proceedings with respect to the Thane Debtors

known to the Receiver, a list of all litigation in which any of the Thane Debtors are parties in the

United States, and a list of all entities against whom provisional relief is being sought under

section 1519 of the Bankruptcy Code, is attached hereto as Exhibit B.

3.      This Petition is also supported by the Declaration of Pritesh Patel of

Richter Advisory Group Inc., and the exhibits annexed thereto, including the Report of the

Proposed Receiver (the "Report") dated October 19, 2015 and the Supplementary Report to the

Report of the Proposed Receiver (the "Supplemental Report") dated October 22, 2015 (together

with the Report, collectively, the "Receiver's Report"), attached hereto as Exhibit C, and the

Affidavit of Paul Findlay of Bank of Montreal, attached hereto as <u>Exhibit D</u> (the "Findlay Affidavit").

4.      The Receiver is the authorized foreign representative of the Thane Debtors, and as such is entitled to petition this Court directly for recognition of the Canadian Proceeding under section 1509 of the Bankruptcy Code.  The Canadian Proceeding qualifies as a "foreign main proceeding" under section 1502(4) of the Bankruptcy Code because it is pending in Toronto, Ontario, Canada, and Ontario is the "center of main interests" for the Thane Debtors.

5.      Because (i) recognition of the Canadian Proceeding would not be contrary to public policy under section 1506 of the Bankruptcy Code, (ii) the Canadian Proceeding is a foreign main proceeding under section 1502(4) of the Bankruptcy Code, (iii) the Receiver is a "person" pursuant to section 101(41) of the Bankruptcy Code, and (iv) the Receiver has complied with all requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4), the Receiver is entitled to entry of an order recognizing the Canadian Proceeding as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code, and is further entitled to the relief set forth in sections 1520 and 1521 of the Bankruptcy Code.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and 1334, and 11 U.S.C. §109 and 1501.  Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. §1410.  This is a core proceeding under 28 U.S.C. §157(b)(2)(P).

## FACTUAL BACKGROUND

7.      *Thane Group's Business*.  The Thane Group operates a multi-national direct response business (the "Thane Business").  The Thane Group focuses on the sale of unique consumer products using developed promotional programs with product development (in-house and through third parties), manufacturing (through third parties) and distribution (in-house and

through third parties) directly to consumers locally and globally as well as distribution of those products through traditional retail store distribution channels to consumers (the "Thane Business").

8.     *Corporate Organization.*  An organization chart showing the corporate structure of the Thane Group is attached as Appendix A to the Report.  Additional details regarding the ownership of the Thane Group are set out in detail in the Receiver's Report and the Findlay Affidavit.  For purposes of this petition, the important facts are as follows:

    a.   Direct Marketing Holdings, Inc. is the registered owner of 100% of Thane International, Inc.'s common shares.

    b.   Thane International, Inc., a Delaware corporation, one of four (4) U.S. members of the Thane Group, is in turn the direct or indirect parent of the remaining Thane Debtors.

    c.   With respect to the remaining U.S. members of the Thane Group, West Coast Direct Marketing, Inc. is a California corporation and TDG, Inc. and Thane Direct, Inc. are Delaware corporations.

9.     *Center of Main Interests.*  The business operations of the Thane Group are carried on principally from its head office located at 5255 Orbitor Drive in Mississauga, Ontario (the "Head Office").  The Thane Group established its Head Office in Mississauga, Ontario in 1997.  The Thane Group also maintains leased facilities in the United States, the United Kingdom, Australia, Scandinavia, and Mexico.  Currently, the Thane Group operates in over 10 countries through its subsidiaries and over 100 countries through its third party distribution partners.  The Thane Group's key management ("Management") includes Mr. Amir Tukulj, President and Chief Executive Officer, Mr. Russel Orelowitz, Chief Financial Officer, Ms.

Danijela Todorovic, President of Thane Direct, Inc., and Mr. Robert Sencer, General Counsel.
With the exception of Mr. Robert Sencer, Management is located and operates from the Head
Office.  Currently, the Thane Group's day-to-day operations are carried out through Thane
Direct, Inc., and Thane Direct Company from the Head Office with no active operations
occurring in Direct Marketing Holdings, Inc. or Thane International, Inc.  The Thane Group's
"center of main interests" is in Ontario.

10.     *Assets.*  The Thane Group's principal assets consist of cash, accounts
receivable and inventory.  Based on the Thane Group's financial results as of August 2015,
assets include cash of approximately \$5,000,000,[3] net accounts receivable (excluding
intercompany receivables) of approximately \$13,200,000 and net inventory of approximately
\$14,400,000.  The Thane Group also has a book value of other assets (other than trade accounts
receivable and inventory) of approximately \$17,000,000 million as of August 31, 2015.

11.     *Liabilities.*

a.  *Senior Credit Facility.*  Substantially all of the Thane Group's assets are
collateral for a senior term and revolving credit facility provided by Bank
of Montreal, as syndication agent and administrative agent ("BMO" or the
"Agent") for itself, National Bank of Canada and HSBC Bank Canada as
lenders (collectively, the "Senior Lenders"). The outstanding borrowings,
exclusive of interest, under the senior credit facilities total approximately
\$96 million.  The Thane Group has not made any principal or interest
payments to the Senior Lenders since November 2013 and
November 2014, respectively.

---

3       All dollar amounts set forth herein are United States dollars.

b.   *Automobile Financing*.  In addition to the secured claims of the Senior

Lenders, the Thane Debtors have small indebtedness owed to third party

finance companies providing automobile financing for employees and

executives.

c.   *Trade Creditors*.  Trade creditors are owed about $10 million,

approximately $188,000 of which relates to the Thane Debtors

incorporated in the United States.

12.   *Business Deterioration*.  The Thane Group products have a shorter

lifecycle than many consumer products.  The Thane Group either develops products in-house or

acquires product concepts from third-party product creators.  After reviewing hundreds of

products per year, the Thane Group management selects what they consider to be the products

with the highest sales and earnings potential.

13.   From 2008-2011, the Thane Group experienced unprecedented product

success with the X-5 Steam Mop and the Swivel Sweeper, Abdoer Twist, and Abtronic.  The

Steam Mop went through multiple iterations resulting in extended and increased EBITDA

generation over an unexpectedly long period.  In 2012, the Thane Group undertook a dividend

recapitalization whereby the shareholders realized value achieved on the product success and

increased indebtedness to the Senior Lenders.

14.   The Thane Group's working capital expenditures for product development

and redevelopment continued in the ordinary course at the same levels as those prior to the

Steam Mop program success.  The Thane Group did not take into account that if the anomalous

success of the Steam Mop program were not replaced, there needed to be enhanced spending on

product development.  As the Steam Mop program fell into the more normal pattern of product

lifecycle decline, new products were coming online that were not as successful as the Steam Mop program.  Accordingly, revenues declined.

15.     Additionally, the Thane Group's markets began to shift and long format television advertising and sales began to decline in the U.S. and Canada.  The Thane Group moved to increase distribution of its products through traditional retail distributions systems, including sales through major retailers such as Wal-Mart.  However, product profit margins were narrower for traditional retail distribution than direct-to-market distribution through long format advertising sales.

16.     As a consequence of all of the foregoing and other market forces, the Thane Group's revenues began to materially decline.  The Thane Group's annualized adjusted EBITDA decreased to approximately $16 million in 2014 and $7 million in 2015, as compared to approximately $40 million in 2013.  Furthermore, the Thane Group's financial results have continued to deteriorate year to date resulting in an EBITDA loss of approximately $2 million as of August 31, 2015.

17.     In September 30, 2013, the Thane Group borrowers defaulted on certain of their covenants and obligations to the Senior Lenders.  The Senior Lenders agreed to forbear from exercising certain of their rights and remedies and to provide further loans pursuant to the terms and conditions set out in a forbearance agreement originally dated November 12, 2013 and subsequently amended and restated on May 26, 2014 (as further amended from time to time, the "Forbearance Agreement").  The Forbearance Agreement contemplated that the Thane Group engage in a sales process for the Thane Business.

18.     *Sales Process.*  The Thane Group engaged SSG Capital Advisors to conduct the sales process, which commenced in July 2014.  On May 22, 2015, after an extensive

marketing effort, Amir Tukulj and Russel Orelowitz, the current management of the Thane Group, entered into a letter of intent with the Senior Lenders with respect to the purchase of all or substantially all of the assets and/or shares (the "Purchase Transaction") of the Thane Group. The terms and conditions of the Purchase Transaction are now set forth in that certain Offer to Purchase, by and between the Receiver, as seller and 9472541 Canada Inc. ("New Thane Holdco"), 9472550 Canada Inc., 635427, Inc. and 652134 Limited, as purchasers (the "New Thane Purchasers"), dated October 16, 2015 (the "Purchase Agreement"), a copy of which is attached as Appendix B to the Report.

19.     *Purchase Agreement*.  Pursuant to the Purchase Agreement, substantially all of the business operated by the Thane Debtors and certain of their affiliates will be acquired by the New Thane Purchasers. The shares of New Thane Holdco will initially be owned indirectly by the two of the three existing Senior Lenders (BMO and National Bank of Canada), as to a minority interest, and certain of the existing management team of the Thane Group, as to the remaining majority interest, all as is described in more detail below.

20.     The New Thane Purchasers have offered to purchase the Thane Business for a purchase price of approximately $50 million.  The purchase price is to be funded by way of financing to be provided to New Thane Holdco by the Senior Lenders, and the cash proceeds of the transaction are to be immediately distributed by the Receiver, which distribution may be effected by way of direction, and applied in reduction of the existing indebtedness owed to the Senior Lenders.

21.     The following is a summary[4] of certain material provisions of the Purchase Agreement:

---

[4]     Any summary of, or reference to, the terms and conditions of the Purchase Agreement herein are qualified in their entirety by the actual terms and conditions of the Purchase Agreement.  To the extent there is any

a. The New Thane Purchasers have been incorporated as Canadian corporations (with the exception a subsidiary of New Thane Holdco which has been incorporated in the U.K. to hold intellectual property) to acquire the assets and shares making up the Thane Business;

b. BMO and National Bank of Canada[5] (the "Participating Lenders"), through an intermediary holding company, will hold a total of 35% of the initial overall equity in New Thane Holdco (the "Participating Lender Equity");

c. Amir Tukulj and Russel Orelwitz, on behalf of themselves and other members of the senior management of the Thane Group (the "Management Shareholders"), will hold a total of 65% of the initial overall equity in New Thane Holdco;

d. The Participating Lenders and the Management Shareholders have entered into a Shareholders Agreement dated as of October 16, 2015 governing their rights and obligations as shareholders of New Thane Holdco (the "Shareholders Agreement"), which includes, among other things, provision for reductions in the equity interest of the Participating Lenders upon certain repayment events in relation to the New Thane Term Loan (defined below) and for various control and sale rights and obligations, all in accordance with the detailed provisions of the Shareholders Agreement;

e. Pursuant to the Purchase Agreement, the New Thane Purchasers will purchase the assets of the Thane Group and the shares of subsidiary companies which make up the Thane Business, for a cash purchase price of $50,000,000;

f. The Purchase Agreement contemplates that the Thane Group will be responsible for payment of all wages, statutory deductions, remittances, assessments, bonuses, vacation pay, sick leave, severance pay, termination pay, amounts paid in lieu of notice, and any other remuneration, benefits and deductions for all employees (the "Employee Amounts") that become due and payable prior to closing; and (ii) the New Thane Purchasers will assume all Employee Amounts for the assumed employees that are accrued (but not due and payable) prior to the closing;

---

inconsistency between any such summary or reference herein and the actual terms and conditions of the Purchase Agreement, the actual terms and conditions of the Purchase Agreement shall control.

[5] HSBC Bank Canada is a Senior Lender and part of the syndicate participating in the credit facilities made available to the Thane Group; however, HSBC Bank Canada will not be an indirect shareholder of New Thane Holdco in the manner of BMO and National Bank of Canada. Instead, HSBC Bank Canada will enter into an agreement with BMO and National Bank of Canada under which it will be entitled to monetary compensation based on an agreed percentage of any returns realized on the Participating Lender Equity.

g.  Continuing employment will be offered by the New Thane Purchasers to all, or substantially all, of the Thane Group's existing employees at the same rate of wages and benefits then provided by the Thane Group, and with other terms and conditions that are substantially the same as those currently in effect with the Thane Group;

h.  As detailed in the Purchase Agreement, and subject to the approval of the Purchase Transaction, it is the intention of the New Thane Purchasers to assume, on closing, substantially all of the trade payables of the Thane Group, such that there will be no material compromise of unsecured claims for trade creditors;

i.  Among other things, the Purchase Agreement is conditional on approval by the court in Canada and by this Court;

j.  Among other things, the Purchase Agreement is also conditional on approvals from the Office of the Superintendent of Financial Institutions ("OSFI") permitting the Participating Lenders to hold their indirect equity ownership in New Thane Holdco;[6]

k.  The Senior Lenders (*i.e.,* including HSBC Bank Canada) have agreed to provide term financing to New Thane Holdco, conditional on the closing of the Purchase Transaction and on the terms of a credit agreement negotiated with the Management Shareholders (the *"*New Thane Credit Agreement") under which the Senior Lenders will advance the $50,000,000 cash purchase price to New Thane Holdco, on a fully secured and senior basis (the "New Thane Term Loan");

l.  The Participating Lenders (*i.e.,* not including HSBC Bank Canada) have agreed to provide operating financing to New Thane Holdco conditional on the closing of the Purchase Transaction and on the terms of the New Thane Credit Agreement, up to a maximum principal amount of $6,000,000, also on a senior secured basis (the "New Thane Operating Loan"); and

m.  The Management Shareholders have agreed to provide a term loan to New Thane Holdco in the amount of $2,000,000, *pari passu* with the New Thane Term Loan and on comparable terms and conditions but subordinate to the New Thane Operating Loan.

---

[6]  The Receiver is advised that the *Bank Act* (Canada) imposes a variety of restrictions on the ability of Canadian banks to hold equity interest, including limits on the periods of time during which an equity position can be held. The commercial basis for the Purchase Transaction and for the Participating Lenders' interest in the equity of New Thane Holdco requires that OSFI approve the ownership by the Participating Lenders of a "substantial interest" in New Thane Holdco for a period of more than 5 years.

22.     The Purchase Agreement specifies the assets and shares of the members of the Thane Group which will be acquired by the New Thane Purchasers.  The chart below sets out what is being sold in relation to each of the Thane Debtors:

| Thane Receivership Company | Assets/Shares Being Sold | Purchaser |
|---|---|---|
| Thane International, Inc. | IP Assets | 652134 Limited ("New Thane IPCO (UK)") |
| | Other Assets | 635427, Inc. ("New Thane US") |
| Thane Direct, Inc. | Shares – 80% equity interest in Grupo Mejor Compra SAPI de CV | 9472541 Canada Inc. ("New Thane Holdco") |
| | Other Assets | New Thane Holdco |
| Thane Direct Company | Shares:<br>• Danoz Direct Pty Ltd.<br>• TVNS Scandanavia AB<br>• Thane Direct UK Ltd. | New Thane Holdco |
| | IP Assets | New Thane IPCO (UK) |
| | Other Assets | 9472550 Canada Inc.("New Thane Canada") |
| | IP Licence with New Thane IPCO(UK) | New Thane Canada |
| Thane Direct Marketing Inc. | Shares:<br>• Medio Latino Inc.<br>• Thane USA, Inc. | New Thane U.S. |
| | Other Assets | New Thane Canada |
| West Coast Direct Marketing, Inc. | Other Assets | New Thane U.S. |
| TDG, Inc. | Other Assets | New Thane U.S. |

| Thane Receivership Company | Assets/Shares Being Sold | Purchaser |
|---|---|---|
| Thane Direct Canada Inc. | IP Assets | New Thane IPCO (UK) |
| | IP Licence with New Thane IPCO (UK) | New Thane Canada |
| | Other Assets | New Thane Canada |

23. The shares of each of the Thane Debtors and the interests of the Thane Debtors in a limited number of Excluded Contracts identified under the Purchase Agreement are not being sold. In addition, outstanding litigation and/or previous litigation settlements/judgments against the Thane Debtors will remain unpaid as well as litigation proceedings that are outstanding which could result in future liabilities. Finally, certain non-priority tax liabilities of the Thane Debtors will remain unpaid, including taxes, if any, incurred in the United States as a result of any cancellation of indebtedness income occasioned by the sale.

24. It is intended that the Thane Debtors and those affiliates whose shares and assets are not being sold will be wound down following the completion of the Purchase Transaction.

25. BMO is requesting in the Canadian Proceeding that the Receiver be authorized to make an immediate distribution of the cash purchase price paid by the New Thane Purchasers (which cash purchase price is being advanced by the Lenders under the New Thane Term Loan) as a payment on account of the indebtedness currently outstanding to the Senior Lenders. If the Purchase Transaction is approved and closes, the indebtedness currently outstanding to the Senior Lenders will be reduced by approximately $50 million.

## CANADIAN RECEIVERSHIP PROCEEDING/SALE PROCESS

26.     *Receivership.*  The Thane Group did not contest the appointment of a receiver, and on October 23, 2015, an Order was entered in the Canadian Proceeding appointing Richter Advisory Group Inc. as receiver for the Thane Group.  As indicated above, a certified copy of the Order appointing the Receiver is attached hereto as <u>Exhibit A</u>.

27.     *Chapter 15 Filing Authorized.*  The Receivership Order specifically contemplates the institution of these Chapter 15 proceedings by the Receiver to assist the Receiver in carrying out its duties under the Receivership Order.  <u>See</u> Receivership Order ¶¶ 5, 19, 21.

28.     *Purchase Transaction.*  The Receiver, subject to the requirements of Canadian law (with respect to assets in Canada) and Chapter 15 of the Bankruptcy Code (with respect to assets in the United States), expects that it will immediately seek approval of the Purchase Transaction.

## RELIEF REQUESTED

29.     In furtherance of its duties as receiver of the Thane Group, the Receiver seeks an Order of this Court pursuant to sections 105(a), 1507, 1517, 1520, and 1521 of the Bankruptcy Code, substantially in the form of the proposed order attached hereto <u>Exhibit E</u>, granting the following relief:

   a.   Recognition of the Canadian Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

   b.   Appointment of receiver as foreign representative;

   c.   Granting relief as of right upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under Bankruptcy Code section 362, or if not as of right, then as additional relief authorized by section 1521 of the Bankruptcy Code;

    d.   Granting further additional relief as authorized by Section 1521 of the Bankruptcy Code, including, without limitation:

        i.   Pursuant to section 1521(a)(5) of the Bankruptcy Code, entrusting the Receiver with the administration or realization of all of the Thane Group's assets within the United States, and authorizing the Receiver to exercise the powers granted to it under the Receivership Order with respect to assets located in the United States;

        ii.   Pursuant to section 1521(b) of the Bankruptcy Code, entrusting distribution of the Thane Group's assets to the Receiver, subject to the limitations, terms and conditions imposed contained in the Receivership Order and as directed by the court in the Canadian Proceeding; and

        iii.   authorizing the application of sections 363 and 365 of the Bankruptcy Code to these proceedings.

    e.   Otherwise granting comity to and giving full force and effect to the Canadian Proceeding; and

    f.   awarding the Receiver such other and further relief as this Court may deem just and proper.

      30.    In the event the Court determines that the Canadian Proceeding is not eligible to be recognized as a foreign main proceeding as to any of the Thane Debtors, the Receiver seeks recognition of the Canadian Proceeding as a foreign non-main proceeding as defined in section 1502(5) of the Bankruptcy Code as to those entities, and requests that the Court grant the relief requested above, and such other and further relief as is proper, pursuant to Section 1521 of the Bankruptcy Code.

**CONCLUSION**

Wherefore, the Receiver respectfully requests that this Court enter an Order, substantially in the form of hereto as an <u>Exhibit E</u>, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 25, 2015
        Wilmington Delaware

<u>/s/ Mark Desgrosseilliers</u>
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Morgan L. Patterson (Del. Bar No. 5388)
Nicholas T. Verna (Del. Bar No. 6082)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone:  (302) 252-4337
Facsimile: (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: mpatterson@wcsr.com
E-mail: nverna@wcsr.com

Attorneys for Richter Advisory Group Inc.

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Pritesh Patel declares as follows:

I am a Vice President of Richter Advisory Group Inc., the receiver appointed by the Superior Court of Justice (Commercial List), Ontario, Canada, and have full authority to verify the foregoing Verified Petition For Recognition Of Foreign Main Proceeding And Related Relief (the "Petition for Recognition"). I have read the foregoing Petition for Recognition, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 25, 2015

*/s/ Pritesh Patel*
Pritesh Patel, CIRP, CFA, MBA
Vice President
Richter Advisory Group, Inc.

**EXHIBITS TO MOTION**

Exhibit A  –  Certified Copy of Order Appointing Receiver

Exhibit B  –  Bankruptcy Rule 1007(a)(4) Statement:
- All administrators in foreign proceedings
- All parties to any litigation in the United States
- All entities against whom provisional relief is sought

Exhibit C  –  Declaration of Pritesh Patel of Richter Advisory Group Inc., the Receiver's Report dated October 19, 2015, and the Supplemental Report of the Receiver dated October 22, 2015

Exhibit D  –  Affidavit of Paul Findlay of Bank of Montreal

Exhibit E  –  Proposed Order